FILED
2016 Aug-31 PM 05:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ELISHA WREN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:15-CV-00963-MHH** |
| | } | |
| **CAROLYN W. COLVIN,** | } | |
| **Commissioner of the** | } | |
| **Social Security Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), plaintiff Elisha Wren seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Ms. Wren's claims for a period of disability and disability insurance benefits and supplemental security income. After careful review, the Court affirms the Commissioner's decision.

## I. PROCEDURAL HISTORY

Ms. Wren applied for a period of disability and disability insurance benefits and supplemental security income on July 20, 2012. (Doc. 5-6, pp. 2-3, 4-13).

Ms. Wren contends that her disability began on July 20, 2012. (Doc. 5-3, p. 37).[1] The Commissioner initially denied Ms. Wren's claims on September 26, 2012. (Doc. 5-5, pp. 7-16). Ms. Wren requested a hearing before an Administrative Law Judge (ALJ). (Doc. 5-5, pp. 17-23). The ALJ issued an unfavorable decision on February 13, 2014. (Doc. 5-3, pp. 18-29). On May 14, 2015 the Appeals Council declined Ms. Wren's request for review (Doc. 5-3, pp. 2-5), making the Commissioner's decision final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. §§ 405(g) and § 1383(c).

## II. STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d

[1] During the administrative hearing, Ms. Wren amended her alleged onset date to July 20, 2012. (Doc. 5-3, p. 37). Initially, Ms. Wren alleged that August 1, 2011 was her onset date. (Doc. 5-6, pp. 2, 4).

1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If the ALJ's factual findings are supported by substantial evidence, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past

> relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Wren has not engaged in substantial gainful activity since July 20, 2012, the amended alleged onset date. (Doc. 5-3, p. 20). The ALJ determined that Ms. Wren suffers from the following severe impairments: back strain, obesity, profound hearing loss in the left ear, depression, bipolar disorder, and a learning disorder. (Doc. 5-3, p. 20). Based on a review of the medical evidence, the ALJ concluded that Ms. Wren does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 5-3, p. 21). Therefore, the ALJ evaluated Ms. Wren's residual functional capacity.

The ALJ stated that Ms. Wren has the RFC to perform:

> medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant must avoid exposure to heights and hazards as well as avoid excessively noisy work environments. The claimant is limited to simple routine tasks and a few detailed as well as a few multi-step tasks that can easily be demonstrated and she could work on the low-end of semi-skilled work. The claimant is able to have frequent but superficial interaction with coworkers.

(Doc. 5-3, p. 24). Based on this RFC, the ALJ concluded that Ms. Wren is able to perform her past relevant work as a cashier, hostess, and waitress. (Doc. 5-3, p.

27).  Relying on testimony from a vocational expert, the ALJ found that other jobs exist in the national economy that Ms. Wren can perform in addition to her past relevant work, including general office clerk, cleaner, dishwasher/kitchen helper, laundry worker, ticket taker, and garment folder. (Doc. 5-3, p. 28).  Accordingly, the ALJ determined that Ms. Wren has not been under a disability within the meaning of the Social Security Act.  (Doc. 5-3, p. 29).

## IV. ANALYSIS

Ms. Wren argues that she is entitled to relief from the ALJ's decision because the ALJ failed to develop a full and fair record, and the ALJ failed to give the proper weight to the findings and records of Dr. Blotcky, a consultative physician. (Doc. 12, p. 9-11).  The Court examines each issue in turn.

### A. The ALJ developed a full and fair record.

Ms. Wren argues that the ALJ should have ordered a consultative mental examination to fully investigate her disability allegations.  The Eleventh Circuit Court of Appeals recently reiterated that when making an RFC assessment, an ALJ "'has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision.'"  *Castle v. Colvin*, 557 Fed. Appx. 849, 853 (11th Cir. 2014) (quoting *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1269 (11th Cir. 2007)); *see also Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1210

(M.D. Ala. 2002) (An ALJ "is not required to order a consultative examination unless the record, *medical* and *non-medical*, establishes that such an examination is necessary to enable the ALJ to render a decision.") (emphasis in *Sellers*).

In this case, the record contained sufficient evidence for the ALJ to make an informed decision regarding Ms. Wren's mental capacity. The records available to the ALJ included work history and function reports, which state that Ms. Wren has held a variety of jobs and performed many tasks on a day-to-day basis; medical records from Ms. Wren's primary and treating physicians which include a diagnosis of bipolar disorder; and psychiatric records noting Mr. Wren's depressive order. (Doc. 5-7, pp. 24-39; Doc. 5-8, pp. 53, 59-62, 71-73). The record also contains treatment notes from mental health providers who indicated in April 2013 that "outpatient services are reasonably expected to improve" Ms. Wren's bipolar symptoms, condition, and functional level. (Doc. 5-8, p. 80). Ms. Wren's treating psychiatrist noted in August 2013 that Ms. Wren would seek employment or secure disability benefits. (Doc. 5-8, p. 86).

The record also contains a report and a medical source statement from an evaluating psychologist who completed a mental status exam and administered tests to determine Ms. Wren's level of intellectual functioning. (Doc. 5-8, pp. 50-55). Additionally, the record includes Ms. Wren's testimony in which she acknowledged her ability to function in social settings, care for her children,

prepare meals, and pass the science and history portions of her GED. (Doc. 5-3, pp. 40-47, 51). Ms. Wren testified that she could not work because of back pain, not because of mental impairments. (Doc. 5-3, p. 47).

The ALJ determined that Ms. Wren's residual functional capacity was supported by the evidence, "which shows that [Ms. Wren] only experiences mild to moderate psychiatric symptoms when she is compliant with her treatment and she is able to engage in many activities of daily living despite her learning disorder." (Doc. 5-3, p. 27). Therefore, the ALJ was not required to order a consultative examination. *See e.g.*, *Castle*, 557 Fed. Appx. at 853; 20 C.F.R. § 404.1519a(a)(2) ("When we purchase a consultative examination, we will use the report from the consultative examination to try to resolve a conflict or ambiguity if one exists. We will also use a consultative examination to secure needed medical evidence that the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision.").

**B. The ALJ gave proper weight to Dr. Blotcky's opinion.**

Dr. Blockty is a one-time examining consultative psychologist. Therefore, as a matter of law, his opinion is not entitled to deference. *See Denomme v. Comm'r of Soc. Sec.*, 518 Fed. Appx. 875, 879 (11th Cir. 2013) ("The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician.") (*citing McSwain v. Bowen*,

814 F. 2d 617, 619 (11th Cir. 1987)). Nevertheless, the ALJ still must explain the weight he assigned to Dr. Blotcky's opinion and the rationale for doing so. *See Winschel*, 631 F.3d at 1179 ("[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.") (*citing Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)).

At the request of Ms. Wren's attorney, Dr. Blotcky conducted a consultative psychological examination of Ms. Wren on May 16, 2013. (Doc. 5-8, p. 50). Dr. Blotcky noted that:

> Elisha was appropriately attired and nicely groomed for this evaluation. She was wearing casual clothes that were clean and neat. She had on make-up and jewelry. She has some tattoos. Elisha complained of pain in her back. She has hearing loss in her left ear. Elisha demonstrated logical and orderly thinking. Her thought processes were concrete and simplistic. Her speech was normal. Her abstract thinking was poor. Her memory functioning was intact but vague. Elisha seemed depressed to me. Her affect was restricted. She looked worn. Many of her verbalizations were morbid in content. Her energy level was low. Elisha was not psychotic. She does not have a thought disorder. This woman's judgement is grossly intact. Her insight is limited.

(Doc. 5-8, p. 51). Dr. Blotcky administered a WAIS-IV and IQ test. Ms. Wren obtained a "Verbal Comprehension Index of 74, a Perceptual Reasoning Index of 69, a Working Index of 71, [and] a Processing Speed Index of 74." (Doc. 5-8, p. 51). Dr. Blotcky assessed a full scale IQ score of 67. (Doc. 5-8, p. 52). Dr. Blotcky diagnosed Ms. Wren with depressive disorder, NOS, and mild mental retardation.

Based on his examination, Dr. Blotcky made the following recommendations:

> Elisha must be involved in psychiatric treatment on a regular and uninterrupted basis. She needs to be under the care of a psychiatrist and psychologist. Her treatment should include a combination of medication and individual counseling. She must complete a domestic violence program as well.
>
> Elisha must be followed by a physician for her back condition. She also needs to be followed for the hearing loss in her left ear.
>
> Elisha's intellectual abilities fall into the Mildly Retarded range. Her intellectual limitations are a lifelong problem.

(Doc. 5-8, p. 52). Dr. Blotcky noted that Ms. Wren's "prognosis is poor to very poor because of her depressive disorder NOS and mental retardation. Her medical conditions, especially the persistent pain in her back, are primary as well. Taken together her impairments and limitations are marked in severity." (Doc. 5-8, p. 53).

Dr. Blotcky also completed a mental medical source opinion form. (Doc. 5-8, pp. 54-55). Dr. Blotcky checked boxes stating that Ms. Wren has marked limitations in the following categories: respond appropriately to supervisors; respond appropriately to customers or other members of the general public; use judgment in detailed or complex work-related decisions; deal with changes in a routine work setting; understand, remember, and carry out detailed or complex instructions; respond to customary work pressures; maintain attention,

concentration or pace for periods of at least two hours; maintain social functioning; maintain activities of daily living. (Doc. 5-8, pp. 54-55). Dr. Blotcky also checked boxes indicating that Ms. Wren has moderate limitations in the following categories: respond appropriately to co-workers; use judgment in simple, one or two step, work-related decisions; understand, remember, and carry out simple, one or two-step instructions. (Doc. 5-8, pp. 54-55).

The ALJ gave Dr. Blotcky's opinion reduced probative weight because:

> the findings made during the examination are inconsistent with the claimant's own reported activities of daily living that included engaging childcare, cooking, shopping and running errands. Additionally these findings are inconsistent with the claimant's ability to work until she was terminated due to a back injury and the claimant's sporadic mental health treatment and limited objective signs during her psychiatry sessions.

(Doc. 5-3, p. 27).

Ms. Wren argues that Dr. Blotcky's report establishes that she meets Listing 12.05 for intellectual disability.[2] "To meet Listing 12.05 for [intellectual disability], 'a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22.'" *Perkins v. Comm'r of*

---

[2] The ALJ's decision uses the term mental retardation instead of intellectual disability. (R. 21). Effective September 3, 2013, the Commissioner replaced the term "mental retardation" with "intellectual disability" in Listing 12.05, but the change did not affect the substance or requirements of the listing. *See* Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46,499, 46,501 (Aug. 1, 2013). The Court discusses the listing using the terminology that the Commissioner adopted in September 2013.

*Soc. Sec.*, 553 Fed. Appx. 870 (11th Cir. 2014) (quoting *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)). "A claimant must meet these diagnostic criteria in addition to one of the four sets of criteria found in 12.05(A), (B), (C), or (D) in order to show that his impairments are severe enough to meet or equal Listing 12.05." *Id.* (citing 20 C.F.R. § 404, Subpart P, Appendix 1, § 12.00(A)). A claimant is presumed disabled under Listing 12.05(C) if the claimant meets the introductory diagnostic description and shows a "valid verbal, performance, or full scale IQ of 60 through 70." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(C).

Based on Br. Blotcky's assessed full scale IQ score of 67, Ms. Wren is entitled to a presumption of intellectual disability, however, the Eleventh Circuit has held that "a valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992); *see also Popp v. Heckler*, 779 F.2d 1497, 1500 (11th Cir. 1986) (per curiam) ("[T]he ALJ was not required to find that [the claimant had an intellectual disability] based on the results of the IQ test. The ALJ is required to examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior."); *Outlaw v. Barhnart*, 197 Fed. Appx. 825, 827 (11th Cir. 2006) (A "valid IQ score is not conclusive of [intellectual disability]

when the IQ score is inconsistent with other evidence in the record about claimant's daily activities.").

Substantial evidence supports that ALJ's conclusion that, despite Ms. Wren's qualifying IQ score, Ms. Wren's mental impairments are not as severe as Dr. Blotcky suggests. Dr. Blotcky's opinion concerning Ms. Wren's mental limitations is inconsistent with the medical evidence, Ms. Wren's work history, and her own description of her daily activities.

Doctors and medical professionals who treated Ms. Wren at Capitol Care found signs of bipolar and other depressive disorders. Ms. Wren received medication for depression in July of 2013, and her medical chart from April 2013 notes a diagnosis of bipolar disorder. (Doc. 5-8, pp. 66, 71). However, these physicians, and all doctors and specialists who treated and examined Ms. Wren prior to Dr. Blotcky, did not note signs, findings, or other evidence indicating that Ms. Wren has significantly subaverage general function or deficits in adaptive functioning. (Doc. 5-8, pp. 2-12, 20-29, 36-49, 56-78, 81-105; Doc. 5-9, pp. 2-49). Notably, just one month before Dr. Blotcky's examination, Ms. Wren told her treating psychiatrist that she wanted to get a job but was still having back problems. Ms. Wren did not suggest to her mental health providers that her intellectual disability prevented her from working. (Doc. 5-8, p. 81). Accordingly, the ALJ properly rejected the opinion of one-time examiner, Dr. Blotcky. *See*

*Monroe v. Comm'r of Soc. Sec.*, 569 Fed. Appx. 833, 835 (11th Cir. 2014) ("[A]n ALJ 'may reject any medical opinion if the evidence supports a contrary finding.'") (quoting *Sharfaz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)); *Perkins v. Comm'r of Soc. Sec.*, 553 Fed. Appx. 870, 874 (11th Cir. 2014) ("[B]ecause the ALJ determined that [a consultative examiner's] opinions regarding [the claimant's] deficits in adaptive functioning were contrary to the record evidence, he correspondingly assigned [the consultative examiner's] opinions in this regard diminished weight. Thus, the ALJ did not completely disregard [the consultative examiner's] evaluation, and provided sufficient reasoning for assigning his opinions regarding adaptive functioning diminished weight.").

Ms. Wren's work history also contradicts the findings of Dr. Blotcky. She was engaged in substantial gainful activity until July of 2012 and has held a variety of jobs including that of a warehouse worker, cashier, waitress, and hostess. (Doc. 5-3, p. 27; Doc. 5-6, pp. 14-24). At her hearing, the vocational expert classified Ms. Wren's past work as semi-skilled work. (Doc. 5-3, pp. 64-65; Doc. 5-7, pp. 24-39). Ms. Wren's ability to perform semi-skilled work is additional evidence that she does not demonstrate the requisite deficiencies in adaptive functioning to meet Listing 12.05(C). *See e.g.*, *Perkins*, 553 Fed. Appx. at 873 (holding ALJ properly considered claimant's work history, even if only semiskilled work, as

evidence claimant did not have deficits in adaptive functioning); *See Harris*, 505 Fed. Appx. at 876 (affirming ALJ's decision that, despite a qualifying IQ score under listing 12.05, the claimant did not demonstrate deficits in adaptive functioning because the claimant previously worked "as a prep cook, dishwasher, food server, furniture deliverer, and truck driver, and he did not have any documented work problems attributed to his mental impairment").

      Finally, Ms. Wren's descriptions of her daily activities are inconsistent with Dr. Blotcky's opinion that her mental impairments and limitations are marked in severity. Ms. Wren shops, cooks meals, assists her children with homework, and runs errands. (Doc. 5-7, p. 33). On a daily basis, Ms. Wren prepares her children for school, takes her children to school and daycare, goes to the store or doctor, picks up her children from school, plays with her children, and prepares meals for her family. (Doc. 5-7, pp. 32-34). Ms. Wren lived alone and took care of herself and her three children without outside help until 2012 when her mother, who is on disability, moved in with the family. (Doc. 5-3, p. 42). Ms. Wren also owns a car and has had her driver's license since she was sixteen. (Doc. 5-3, p. 40). Until four months before her ALJ hearing, when Ms. Wren stopped driving, she drove her youngest child to daycare. (Doc. 5-3, p. 39-41). Ms. Wren indicated that her limited activities were due to her physical impairments and depression, not her intellectual functioning. (Doc. 5-3, pp. 49-51). She also testified that she was able

to pass the history and science portions of the GED and failed the math portion because she did not finish the classes provided before the test. (Doc. 5-3, p. 52).

Therefore, the ALJ properly concluded that Dr. Blotcky's opinion is inconsistent with Ms. Wren's activities of daily living. *See e.g. Harris v. Comm'r of Soc. Sec.*, 330 Fed. Appx. 813, 815 (11th Cir. 2009) (noting the claimant did not qualify for listing 12.05C because he "did well in special education classes and was able to hold several jobs," and was able to "dress and bathe himself, take care of his personal needs, and manage money"); *Hickel v. Comm'r of Soc. Sec.*, 539 Fed. Appx. 980, 984-85 (11th Cir. 2013) (noting claimant's ability to work part time, drive, prepare simple meals, attend church, and socialize with friends as evidence of no deficits in adaptive functioning).

Because Dr. Blotcky's opinion is not entitled to deference and because his opinion is inconsistent with Ms. Wren's daily activities, work history, and medical treatment records, substantial evidence supports the ALJ's decision to give Dr. Blotcky's opinion reduced probative weight.

## V. CONCLUSION

For the reasons discussed above, the Court finds that the ALJ's decision is supported by substantial evidence, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the

Commissioner. Accordingly, the Court affirms the Commissioner. The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this August 31, 2016.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE